Our third case this morning is Robert Livingston Jr. against the Attorney General of New Jersey, Ms. Torr. Molly Torr, K&L Gates, on behalf of Mr. Livingston. And, Your Honors, I'd like to request five minutes rebuttal. Granted. We're here today to address whether or not the district court was correct in finding that there was no Brady violation and in denying Mr. Livingston's hated petition. I want to begin by saying that this is not a case where deference should be given to the state court. This is not an AEDPA case. We've already ruled that, right? I'm sorry? This is not an AEDPA case that's already been established. Right. The only issue that the state court ruled was that of admissibility, so nothing that the state court did is entitled to deference here. So the issues that we have here, Mr. Livingston was found guilty of passion provocation, manslaughter, felony murder, two counts of first degree robbery, two counts of a weapons offense, and sentence to life. And the evidence that was suppressed, the materials that were suppressed, were the victim, Mr. Lewis's criminal record, his rap sheet, his juvenile arrests, petitions for burglary, receiving stolen property, trespass, and other criminal conduct, mischief, theft. The issues that really matter here are the fact that Mr. Livingston was not able to use that information, to use the fact that there was a rap sheet, to support his defense that he was acting in self-defense and that Mr. Lewis was an intruder. We'll ask you about this. So you say he was not able to use this. Under Dennis, it's clear that evidence itself does not have to be admissible, but there are a couple of theories on which inadmissible evidence could nonetheless be useful. Sometimes that's because it impeaches a witness, but there's no witness here to impeach. He's dead. Right. So the theory would have to be that the inadmissible evidence would lead to other evidence that's admissible, right? Because you're not arguing that the arrest report itself would have been admissible here. Correct, Your Honor. Not arguing that's admissible. Under New Jersey Rule 405, it looks like it's just not admissible. Correct. So what could this have led to? You know, has there been any investigation? I don't know why there wasn't an evidentiary hearing here. What's the theory on which if we granted relief and reversed or vacated, this would wind up leading to something that had a reasonable probability of changing the outcome? Spin out the best case for the defense on what this leads to that changes the whole case and puts it in a new light. I would say that Judge Simandl actually played out something in his decision that he was surmising as to what this evidence could have come up. And he would say, you know, the best case situation is that this actually leads to Mr. Livingston's counsel at the time finding that this was modus operandi for Mr. Lewis. Okay. The problem I have is at first I thought this might be 404B evidence. But 404B, at least New Jersey courts apply it, seems to be when, you know, there's some question about identity and it's a signature crime. There's no identity question here that Snoop was the one who was there. Sometimes absence of mistake, I don't see how that really applies here. So I'm having a hard time seeing how this comes in as 404B evidence. Am I wrong? Is there a case law you can point me to that suggests that this would come in as that? Or are you making an argument that this would lead to character or opinion evidence about Snoop being a notorious burglar or something? I would say that it could have led to evidence with respect to other victims. If Mr. Lewis had been committing crimes and other victims, it could have also allowed. The problem with that theory is that New Jersey Rule 405 forbids evidence of other specific acts unless they resulted in a conviction. Now, your adversary didn't cite that. But what I found that that really ruled out a lot of the ways you would try to use this. Right. So you can't just bring in the specific victim of another burglary. And there's no other conviction, apparently, on his rap sheet for a crime that looks like this. So then what? Well, Your Honor, one other thing that Mr. Livingston's attorneys could have done is question the police officers as to their investigation. And their lack of investigation as to whether Mr. Lewis did actually was an intruder into Mr. Livingston's home. They did not do anything to evaluate that issue. They did not determine how Mr. Lewis entered into Mr. Livingston's home. And in fact, when Mr. Livingston first called 9-1-1 and the police entered, the police believed him, according to the testimony in court, the police believed him that this was, in fact, an intruder. Mr. Livingston was a victim of a crime. He was treated as a victim of a crime. He sat in the front of the police car with the police officers, went to the court. And it wasn't until the police officers then learned that Mr. Lewis had stayed at Mr. Livingston's house in the past, it wasn't until that point where they said, OK, this is, they questioned whether or not there was an intruder, whether Mr. Lewis was an intruder. But they didn't do anything to actually determine whether Mr. Livingston, I'm sorry, whether Mr. Lewis was an intruder. OK. Why is that? How would this evidence change that? That was fair game for Crossex the first time. How does introducing the fact that he has prior arrests bear on that? Is there some way in which I don't see how that's admissible impeachment evidence of the officers? Well, I would say that this does make clear that the opportunity to have a cross examination is different than having evidence that which you would or which you had had known that you can question the police officers about. If Mr. Livingston's attorney had known that Mr. Lewis had a rap sheet, he would have been able to delve into these questions differently with with the police officers as opposed to just being able to cross examine them. Because his cross examination was limited. What could or should he have asked? Help me. I'm still not getting concretely how this changes his cross. He said the questions that he had asked during cross examination is how did did you determine the point of entry? Did you look at the door? Did you look at the window? It didn't really go beyond that. And with respect to the. What does that have to do with felony murder, though? Murder for to get that conviction, the jury had to conclude that Livingston formed the intent to rob Snoop. Correct. Correct. And the. He didn't he didn't rob him, you know, before he got in or at the moment he got in. He robbed him after he the testimony presented at trial was that that Snoop that Livingston grabbed Snoop's money after he hit him with the bat. Correct. Correct. And so. So. So if Snoop is there bleeding, having been hit with a bat and then his money gets taken, how is it relevant how Snoop got into the apartment in the first place? It goes to whether or not Mr. Livingston committed the predicate offense such that they could establish felony murder. So Mr. Livingston's defense was that he the theft was an afterthought. It was not something that he planned on doing. But the jury didn't buy that. But what I'm what I'm suggesting is that I don't understand how. The reason why Snoop found himself in the Livingston's apartment is relevant to whether or not Livingston had the specific intent to rob him after he hit him with the bat. Well, it would have just gone to whether or not it would have bolstered having this information with the bolstered Mr. Livingston's ability to present that case. The question is, is there a theoretical linchpin that you can use to say that if there's a Brady violation with regard to the initial crime and a sequence of events that that would stop? Because if you can't say that, then the argument of your adversary is is one that we would have to grapple with. That is, if if if what you're seeking to have admitted goes to the initial crime, what does it have to do with robbery and and felony murder? Because if there's no paradigm for us to say, stop, then those remain. And I guess the question is, where are we? Right. So the appellate division, and I think it was in its 2000 decision, had actually made this point, said that if if the killing occurred or the robbery was anticipated during the killing, then that is felony murder. If it was an afterthought, if it was not something that was that he decided that he was going to do during the killing itself, then that would not be felony murder. And it's not something that's dependent on Brady. That's something that's just with respect to what constitutes felony murder. It has to be something that's that the killing has to be occurred during the commission of or the fleeing of the predicate offense. And here, Mr. Livingston's testimony was, you know, the killing occurred and then there was a gap. And his testimony was it was an afterthought. One had nothing to do with the other. He wasn't committing the killing in terms of further the burglary. The money was. He come to rob me, so I figured at that time I might as well rob him. But that was after. Right. Yes. And you're saying if it was an afterthought, that was not sufficient to convict him of that. Correct. So then the jury could not of necessity have believed him when he said that. Except that they didn't have. So but then we're going back to he didn't have Mr. Livingston didn't have the benefit of having this information as to Mr. Lewis's juvenile record to then be able to bolster his defense and to find additional admissible evidence to support himself in this case. And it's a question of. So the question here is and this is what you know, with all due respect to Mr. Sandoval, that this is what he did. Is there enough evidence there already to to convict? And that's not the question that gets asked with Brady. It's not. Was there enough evidence presented to the jury to convict? But whether or not the evidence that was not was not provided results in having a lack of confidence in the result. And that's that's what that's what the issue is here. The fact that he didn't have this information about Mr. Lewis is that raise a question as to whether or not we are confident that he received a fair trial, not whether there was enough evidence to to to convict him. That's it. That is not the question. Right. Dennis says that that's not the question. And so it's a question of did he have a fair trial without having this evidence presented to him? Counselor, I'm wondering whether there might be any point in a remand for an evidentiary hearing. I don't quite understand why there wasn't one. Would an evidentiary hearing cast any light on what you're asserting, how the cross examination would differently? Is there any theory or reason to believe it would dig up, you know, character, witnesses, reputation, opinion about Snoop being a notorious burglar? We have. Do we have any reason to go down that road? I think that if it's your honor, respectfully, if it's denying this outright or having an evidentiary to figure out what we can find out, then then I would say, yes, and have an evidentiary hearing. The thing is, I don't have enough information with respect to what happened. You know, all that we had with the criminal record was just what was in the brief and submitted in post trial to the state court 20 years ago. And so, I mean, it's it's possible that we would be able to find additional information if there was an evidentiary hearing. But at this time, there's nothing you've asked for, have asked for leads. I mean, we would be able to ask for the specific information as to the juvenile record itself as opposed to a summary. And then we can use that information to to go down into the leaves and figure out what what what other records existed, what witnesses exist. Is there any support for the self-defense based on I'm sorry, any support for the theory that Mr. Lewis did, in fact, have a background of criminal conduct. And and that's something that Mr. Livingston's attorney, you know, he did because he wasn't provided with that opportunity to have this information and know that there was a criminal record. That's something that he then did not have the ability to use that criminal record to then prompt that. All right. Thank you, Mr. We'll hear you on rebuttal. Thank you. Mr. Matthews. Thank you. Good morning, Your Honor's counsel. May it please the court. First, I want to begin by addressing Judge Bevis. You questioned why I did not cite rule four or five in any part of my argument. I believe I did cite and go very heavily into rules of evidence in prior submissions in terms of the manner in which this has been brought before your It was remanded because Judge Samantha's original decision in district court had cited admissibility as a factor in Brady consideration. It was remanded because Dennis essentially says that admissibility is not a separate prompt. And I'll note at this point, it seems to me in reading the defense or the appellant's arguments, you know, they want to almost treat admissibility as kind of a third rail that's Dennis basically says the court can't consider admissibility. Let's put admissibility aside for a moment. I think, you know, Dennis was long. There were many views expressed. But let's let's put that to the side for a moment. One of the questions that could be this asked your adversary was what what's the use that these records could have been put to? And the question I have for you is at trial, the prosecution said in closing, there is no evidence that Lewis was there to steal anything, that he was, in fact, a burglar or someone committing a property crime. Now, it seems to me that that argument by the prosecution highlights the use the defense could have put if they had the the criminal record. Number one, they would take away the argument that the prosecution has of innocent victim. He was just there. No nefarious intent in being there. That would seem to be valuable. And in undermining that, it would allow possibly other arguments. Now, tell me why that's not correct or that perspective on that statement is not correct. Well, I think really it's key to go back to what the trial prosecutor knew or understood at that time. And consistent with the record in state court, it appears that at some point after the verdict was rendered and prior to sentencing, he realized that he inadvertently told the defense prior to trial that the victim did not have any criminal history. He discovered that there was this rap sheet that was disclosed prior to sentencing. So the defense knew about it. The prosecutor and the defense were both in the dark at that particular point as to the argument that was made. As I'm sure your honors are familiar with, the instructions to the jury are that arguments are not evidence. Please don't go any further on that argument. The give me some substance. I can really only say that it was based on what the prosecutor knew at the time and that he was not aware at that particular point. It wasn't a matter of the evidence grapple with the issue. You've got to admit that that set the prosecution up quite nicely. He's he's the innocent victim. Right. At least give me that. I think so. But it's also countered by the defendant and the need for to support the appellant's argument. The defendant at trial had to be a credible witness to find his version of the events believable. And even just as a matter of his own inconsistent, the number of inconsistent statements that he provided, including his trial testimony. All right. But that goes that goes to materiality. Right. Yes. That sounds like you're you're you're throwing in the towel that there was a Brady violation. You're saying it wasn't material. I agree. I well, I would say a Brady violation in the sense that it was suppressed. I think the record is clear that it was inadvertent. And I conceded that in the district court. The record is very clear on that, that it wasn't inadvertent suppression of the victim's criminal history. So as to me, if we're focused on materiality, then would you address the same types of questions that I asked Miss Tor? What is your position with regard to the fact that he wasn't convicted of the principal charge or the most serious charge? He was convicted of felony murder, which would have required an intent to rob. Do you agree with Miss Tor that it couldn't have been an afterthought that he had to have the intent to rob him while he was beating him with the baseball bat? I concur with that as a legal statement, and I think that was discussed by the appellate division. However, again, in order to rule with that in this case, and I think, as your honor noted, the jury clearly didn't buy that by rendering their verdict. Except I don't see how you can separate out the murder and felony for felony murder. You have to have the felony causes the murder, not you did a murder and then you stole some stuff from a dying guy. Right. So understanding whether he came in as a burglary was the predicate for bumping this up to murder. So the sequence here, I don't see how you can disentangle whether it was a burglary or robbery from whether the homicide ultimately gets bumped up. Because the other alternative that he just his statement on the scene, I took some money from him after he lay there dying. That that's not a predicate for felony murder. So which of the two versions is more believable is going to be influenced by whether or not this was a burglary in the first place. I suppose that's correct, but I think, you know, based on the fact that the defendant, you know, rather consistently tried to portray this as I didn't let him into my home. And there was other evidence, you know, adduced at trial by the prosecutor that that was not the truth and that he left certain things out when this was originally investigated by the police in the immediate aftermath of the incident. Let's take that. Let's take that fact. Is that what would that lead lead a reasonable jury to think that he had him into the house to rob him? Not that he had him into the house to rob him, but that the defendant's version of the events that he was an intruder was not actually the case and that the defendant's statements in that respect were not credible and not believable based on the balance of the evidence. Especially considering the way the victim was positioned, the I guess I'll paraphrase it as odd things that Mr. Livingston did to essentially, my words, dress up the scene in the immediate aftermath of the incident before the police arrived, putting his shoes back on. You're saying the jury didn't believe that he put the boots on because he wanted to look nice when he was headed to the morgue. That's correct. That seems pretty evident to me. Well, that's great that you've expressed your opinion on that, but how does that help us on the Brady violation issue and, you know, materiality and favorability? In terms of favorability, the two specific kinds of favorability are exculpatory, I don't think it's exculpatory in this particular case, or it's impeachable. It's not directly impeachable against the witness and the use that the defense seeks to introduce here, going back to my original point about originally arguing the evidence rules. I don't know that there is a valid method to use the existence of these arrests and their being marked as dismissed in criminal history. This is the best I can imagine. Let's say that there were some eyewitnesses, right, or police reports on these burglaries. And this leads to some people in the community who say, yes, Snoop, we all knew he got close to people and he cased joints and he would just break in and take stuff. He was a known burglar, right? Or even he was a known, like, home squatter, and he broke into homes to stay there, and this was wintertime, right? So, like, he stayed places. He was just that kind of mooch. Wouldn't either of those have given the defense some leg to stand on, something to argue in closing, that this guy, he was not a clean guy. He was a burglar or a robber or a squatter or something like that. I presume your honor refers to that those victims or witnesses could have come and testified on behalf of the defense. They couldn't have testified as to the specific instances because of Rule 405. But maybe the defense could have brought them in generally to say this victim, he had a reputation for being a burglar, a home invader, and couldn't that have bolstered the defense's story? It could have, but it's problematic because I don't know that that ultimately gets to the jury. And when we're considering materiality, we're considering does it undermine confidence in the verdict. This is a 404A1 argument. Why doesn't it come in under 404A1 as general character reputation evidence if they are somehow lucky enough to find witnesses like that, which I think is a big if. And they haven't given us much to work with there. It's an old case. We don't know very much. But if that were found, wouldn't that maybe move the needle? Perhaps hypothetically. However, I think it's important to note that this was information that was received by the defense prior to sentencing, enough to the point where they were able to make an argument before sentencing for a new trial, arguing that there was a Brady violation here. Ultimately, under the old rules, the court found it because it was inadmissible. It wasn't a Brady violation. And when I say the court, I mean the trial court, the trial state court. The defense attorney had this information available at that point and chose not to raise any of those arguments. I agree with your honors that we're all captives to the record that's been maintained. There's no evidentiary hearing or extra information other than the existence of these prior arrests. This would have been useful at trial, not what happened post-trial. And I conceded that it may very well be if that were the case. But there's no information on the record to show that that is the case. A burglary charge can encompass a wide variety of things. And as Judge Simandl discussed in his decision, there's a wide variety of ways that could have been dismissed, either via some type of misidentification. That's a lot of information that — What exactly? Can we just nail down what the convictions were? How many adult convictions did Snoop have? There were zero adult convictions. How many juvenile adjudications did he have? Two. And what were they? I believe one was for a controlled dangerous substance offense. And I cannot recall off the top of my head what the other one was, but it was not a — Joyriding. Wasn't it joyriding? I think so, Your Honor. Well, I think that joyriding was part of the drug offense and that there was something else, a criminal — I had a drug — My notes were drug. I had receipt of stolen property. Okay. But he was never — he never had a juvenile — I believe he was, Your Honor. He never had a juvenile adjudication for burglary? Correct. Those charges, I believe, were marked dismissed on the criminal history. And I'll note — He had allegations. He had arrests for burglary. That was marked as an arrest on his rapshie, was an arrest for burglary. But I thought he had receiving stolen property, which would play right into this theory that we're discussing. Again, potentially, but receiving stolen property can encompass a wide variety of things. If there's a lack of information in the record as to — You know, you speak in terms of proof, and that's the problem that we're having, right? This, to a certain extent, is a theoretical exercise at the moment. So if receiving stolen property is one of them, I mean, that would seem to play right into the theory. There's a more general problem we're having, which is — and this is an old case, and we don't really know much. We don't have the original lawyers around. But what do we do in an area of uncertainty? What do we do if we're not sure? I've looked. I've not found cases that talk about a burden of proof concept or tie goes to the defendant. We're trying to guess what would have happened. We never had any kind of evidentiary hearing. Is there more to find out? Who bears the consequences of, well, it might possibly be this very favorable thing to the defendant, or it may well not be? My best conclusion is to return to what I said, that this was information that the defense had in hand prior to sentencing, enough that they made an argument in state court, and I'm going to presume that it was investigated. It seems like it was investigated because they made a very strong argument as to why it was a Brady violation and a new trial should be ordered. This argument relative to these accusations and arrests was not made, and no information was disclosed to further that, and that's the closest in time we can, going back to try and reconstruct this based on the record that exists today. But the lens was admissibility then. Articulate argument, but I'm not sure it helps us in our quandary. Again, Your Honor, and I would say that we're captives to the record and to the standards that were applicable at that time, and that was advanced. And the admissibility issue didn't prevent the defense from attempting to raise that issue and bring it to the court's attention and asking for a new trial. Okay, thank you, Mr. Matos. Thank you. We'll hear Ms. Torr on rebuttal. Ms. Torr, just so the record's clear, would you respond to the same question I asked Mr. Matos? What exactly do we have? Do you agree there are no adult convictions for Snoop? There are no adult convictions. But we have juvenile adjudications, right? How many and what are they? There were 19. So he was 19 at the time that he died. He was arrested according to the record that we have. Not arrested. I'm sorry, adjudicated for two charges, possession of controlled dangerous substance with intent to distribute near a school and unlawful taking of means of conveyance of joyriding. So the two juvenile adjudications are a controlled substance offense and then basically stealing a car, joyriding in it? Right, unlawful taking of means of conveyance of joyriding. Okay, and then we've got burglary arrests, correct, as a juvenile? I'm sorry, can you repeat that? Arrests for burglary as a juvenile? Arrests for burglary, arrests for receiving stolen property, criminal trespass. Not convicted of those, just arrests? Correct. Okay. All right, go ahead. I would like to say the fact that we're trying to establish the best case to show what this information could have provided to Mr. Livingston, that I think in itself does show that there's a lack of confidence in the result, the fact that this information was not turned over. How can there be a lack of confidence in the result when Mr. Livingston testified this was not a burglary? If the key issue here is whether or not Snoop entered to burglarize Livingston and Livingston said this was not a burglary. When he said that, Your Honor, to the police in his statement that this was not a burglary, so the state I think presented that as him saying that this was not a burglary by Mr. Lewis, but I don't think it's entirely clear that he's saying that, that he was saying that he was not, it was not a burglary. Livingston never said this was not a burglary? He said that in the context of a statement to the police, and the police then took that to mean that he was saying that Mr. Lewis, that the victim was not committing a burglary. Oh, you're saying that when he said this was not a burglary, he's saying I didn't commit a burglary. Right. I mean, I don't think that it's entirely clear from that. And I would like to point out that, as Your Honor had said that, at summation the state had said that there was no evidence that Mr. Lewis was there to steal anything, and this was repeated throughout the summation and repeated throughout the entire case. Well, what evidence would there have been? Well, we could have had in the state's case was that he was a guest. In Mr. Livingston's case is that he was an intruder. And as Your Honor had mentioned, if there was evidence with respect to character of Mr. Lewis, that is something that we would have been able to develop and then present. But you don't, under 404, you don't get to introduce evidence of what someone did in a past case to show that the person just acted in accordance with the propensity. That's the real problem I have in drawing a causal chain between your defense lawyer gets this information and ultimately gets something that gets admitted. This doesn't have to be admissible. It has to lead to something that changes the way the trial goes. And I guess I'm not seeing what you say there's no evidence of burglary. What evidence would have shown that this was a burglary that would have come in? Just one quick point is that it doesn't have to necessarily show that the jury would have come out differently. That's not what we have to establish. Not that there's something that it would have. Right. It's not more likely than not. The reasonable probability of a different outcome. I get that. It's less than 50 percent, much less. Yes. And, again, the defense counsel could have gone out into the neighborhood if he had known. The state told him there was no criminal record. And if he had known that there was a rap sheet, he could have gone out and found out more information from individuals. And, yes, Your Honor, he may have not been able to come out and say this is the crime he committed on X date. But he could have come in and said, well, this is what is known. This is what is known in the neighborhood. This is what Mr. Livingston believed to be the case with respect to Mr. Lewis. This is what then justifies the fact that Mr. Livingston believed that he, that there was a, that Mr. Lewis was coming to commit a burglary. Justifies that Mr. Lewis was coming into his house at 2 a.m. or 3 a.m. So we have to look at what evidence counsel might have gotten and see how it, not just add up with the other evidence, but does it cast the other evidence in a new light? And my brother, Judge Hardiman, made a point. There's some bad facts for you in the record. How is a jury going to get past that the forensic evidence shows the guy had his coat off and his shoes off? And his story is they were fighting. The shoes were on. They flew off during the fight. Then he put the shoes back on so he would look presentable when he got to the hospital. That's pretty bad evidence for your client. How is this going to weaken the jury's confidence in that? Mr. Livingston, I mean, he had inconsistent statements. There's no doubt about that. This was, but it would, he basically was saying, you know, he didn't know what he was doing. He was putting the shoes back on. He was looking for money. He was not, he was not thinking clearly. Right? And so this showing that there was, he did not intentionally go out to kill him in the first instance. He did not, or even in a passion provocation sense, like it was not his intent to be dismantled just because. Right? That this man was coming into his house to rob him. And that's what he believed. Then that does, in fact, lead to say, okay, well then, then it does make it more credible that he was, he put his shoes back on or the shoes went flying off and then he wasn't really, you know, and then he was looking for money and then he put the shoes back on. And although it's not. Should we consider that along with other lies that he told, though, don't we have to look at the evidence cumulatively? Your client told a number of lies, right? I mean, he, he, he told several things that were internally contradictory. Yes. Don't we, don't we consider all that as a whole or do we slice it and dice it and look at each lie individually? I think that, well, I think that you don't need to look at the evidence that was presented to determine whether the evidence alone was enough to convict. And you don't say, okay, well, even if you had the benefit of that, the rap sheet, all that evidence together, that still would have been sufficient to convict him. And that's what the cases say. You don't, that's not the. Yeah, you're right. You're absolutely right about that. It's not a sufficiency of the evidence argument. That's for a different type of case than this one. Right. And so the fact that. It's just, what's strange about your case is that typically when there's a Brady violation, the typical case the defendant's counsel is coming forward saying, wow, if they hadn't played hide the ball, we would have discovered this witness. We would have discovered this evidence. There's a proffer. There's a proffer there. In the Dennis case, it was the so-called Frazier documents, which there was a really good argument that the defense made there that the Frazier documents were exculpatory. Right. So but I'm having trouble sinking my teeth in anything that you have here other than sort of, well, we could have done this or we could have done not you, but defense counsel could have done these things. But these things still remain sort of undefined. Or is that fair? I say that, yes, they're undefined, but they're undefined because the state didn't turn over this evidence to give the defense counsel the ability to do this at the time of the trial. And that's why. I mean, that's why we're in this situation. And had they done that, is there. Does it undermine the confidence in this in this verdict? I submit that it does because of the questions that we're asking now, because it goes directly to Mr. Livingston's defense of self-defense. The fact that Mr. Lewis did have a rap sheet and I understand that he was not convicted of those crimes. We don't know the circumstances under that. We don't know why he wasn't convicted, but we don't know those things because it wasn't turned over to Mr. Livingston's counsel. And that's why we're in this situation now. And I submit that that is why there's a lack of confidence in the result of the conviction. All right. Last question. You're pro bono in this case, correct? All right. Well, the court is grateful for your hard work and your firm's hard work. And we thank you for the argument. We thank Mr. Mattos for the argument. We'll take the matter under advice. Thank you very much. The sports fans adjourned until Wednesday, September 11th at 930 a.m. Yeah. I'm sure I'll be seeing you guys. Oh, yeah. I think. I think. Oh, good luck, guys. Oh, yeah. Yeah. Oh, yeah. Oh, yeah. Sure, we can try.